Wilbur K. Miller, Senior Circuit Judge, dissented in part.

**Roland E. MATTHEWS, Jr., Appellant,**

**v.**

**Kenneth L. HARDY et al.**

**No. 22315.**

United States Court of Appeals District of Columbia Circuit.

Argued June 4, 1969.

Decided Aug. 29, 1969.
Certiorari Denied March 30, 1970.
See 90 S.Ct. 1231.

———◆———

Mr. Peter L. Truebner, Washington, D. C., for appellant.

Mr. David P. Sutton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel at the time the brief was filed, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellees.

Before WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT and Mc-GOWAN, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

In October 1965 appellant began serving a sentence of four to 14 years for manslaughter. He was incarcerated at the Lorton Reformatory until March 1967 when, pursuant to 24 D.C.Code § 302 (1967), he was certified by a psychiatrist as mentally ill and transferred to St. Elizabeths Hospital. In June 1967 appellant filed a *pro se* complaint challenging his transfer to St. Elizabeths and his treatment at Lorton.[1] He was returned to Lorton in August 1967. In May 1968 the instant amended complaint was filed in the United States District Court here. This complaint alleges: (1) appellant's transfer to St. Elizabeths was unconstitutional because no judicial hearing was afforded him; (2) appellant was placed in solitary confinement on a number of occasions while at Lorton without justification; and (3) certain personal property was confiscated by the prison authorities and would not be returned to appellant. The complaint stated that handling appellant in this manner amounted to cruel and unreasonable punishment.

Appellant sought three types of relief —an injunction against any future transfers to St. Elizabeths without a judicial hearing, an order "in the nature of a Writ of Mandamus" requiring that he be released from solitary confinement and that his property be returned to him, and $55,000 in damages. Appellees, the Director of the District of Columbia Department of Corrections and the Board of Commissioners of the District, filed an answer and supporting affidavits stating that appellant's solitary confinement at Lorton was the result of infractions of prison rules, that his property was held by the prison in accordance with regulations, and that his transfer to St. Elizabeths without a judicial hearing was authorized by 24 D.C.Code § 302. After hearing argument of counsel the District Court granted summary judgment in favor of appellees.

1. The *pro se* complaint named Kenneth L. Hardy, Director of the District of Columbia Department of Corrections, and the District of Columbia Board of Commissioners as defendants. On August 11, 1967, the court granted summary judgment in favor of defendants. Appellant brought an *in forma pauperis* appeal here; we remanded the case to the District Court in light of Hudson v. Hardy, 134 U.S.App.D.C. 44, 412 F.2d 1091 (1968), decided the same day. *See* Note 2 *infra*. On remand the District Court appointed a lawyer for appellant; the May 1968 complaint discussed in text was then filed as an amended complaint.

We affirm the denial of monetary and mandamus relief.[2] However, in Part I *infra* we hold that appellant's rights were violated when he was transferred to St. Elizabeths without a judicial hearing. For the reasons stated in Part II *infra,* we remand this aspect of the case for appropriate action by the District Court.

I

Appellant was transferred to St. Elizabeths pursuant to 24 D.C.Code § 302. That section provides that, if the Director of the Department of Corrections believes a prisoner is mentally ill, he can refer the prisoner to a psychiatrist[3]; if the psychiatrist concurs in that belief, the Director can then transfer the prisoner to St. Elizabeths. This streamlined procedure is not hampered by any requirement that the prisoner have a hearing.[4] Once in St. Elizabeths, the prisoner remains there until the superintendent of the hospital believes he has been restored to mental health, at which time he is returned to the Director of the Department of Corrections. 24 D.C.Code § 303 (1967).

Unlike Section 302, the 1964 Hospitalization of the Mentally Ill Act,[5] under which persons are civilly committed to St. Elizabeths, provides for detailed procedures protecting the patient's rights. A person sought to be committed under the 1964 Act is entitled to a judicial hearing and, if he requests it, a jury trial.[6] He has a right to appointed counsel.[7] If he is committed, he has a right to periodic review of his status while in the hospital,[8] and a right to examination by an independent psychiatrist—without cost if he is indigent—if he contests the hospital's

---

2. Appellant claims that summary judgment should not have been granted because there are genuine issues of material fact. Rule 56(c), Fed.R.Civ.P. Citing Phillips v. United States Board of Parole, 122 U.S.App.D.C. 235, 352 F.2d 711 (1965), and Hudson v. Hardy, *supra* Note 1, he argues that the court must treat complaints and affidavits of prisoners more tenderly than the pleadings filed by a normal civil litigant, and thus must not be harsh in making a determination that those pleadings are merely conclusory. We agree that
   "the requirements of the summary judgment rule may not fairly be applied 'with strict literalness' to a prisoner unrepresented by counsel and subject to the 'handicaps . . . detention necessarily imposes upon a litigant.'
   * * * "
   Hudson v. Hardy, *supra* Note 1, 412 F.2d at 1094 (quoting from Phillips, *supra,* 122 U.S.App.D.C. at 238, 237, 352 F.2d at 714, 713). We of course reaffirm *Hudson,* and in fact this case was initially remanded in light of *Hudson. See* Note 1 *supra.*
   The situation here differs from *Hudson,* however, in that appellant had the assistance of counsel in drafting his amended complaint and in preparing an affidavit in support of that complaint. Further, the affidavit was filed after appellees filed their affidavits in support of their motion for summary judgment. Appellees' affidavits were detailed, including the disciplinary reports filled out by the guards and their supervisors at the time of appellant's apparent infractions of prison rules. In response to these detailed affidavits appellant's affidavit only stated the conclusion that appellees' affidavits were "biased," offering no specifics in rebuttal. Similarly, appellees introduced a copy of a memorandum sent to appellant informing him that his property had been received at Lorton and was being held as his personal property in accordance with general prison regulations; again, appellant's affidavit was simply conclusory. Treating appellant's pleadings generously, we nonetheless agree with the District Court that summary judgment was appropriate.
   This disposition makes it unnecessary to reach appellees' claim that in any event the suit against them is barred by sovereign immunity.

3. Under 24 D.C.Code § 106 (1967) a psychiatrist is available to the Department of Corrections for this and other purposes.

4. In appellant's case the transfer to St. Elizabeths was effected, under § 302, after a ten-minute interview with a psychiatrist.

5. 21 D.C.Code § 501 *et seq.* (1967).

6. 21 D.C.Code § 545.

7. 21 D.C.Code § 543.

8. 21 D.C.Code § 546.

conclusion that he remains mentally ill.[9] Where such periodic review results in continued confinement, judicial relief is available.[10]

In view of the sharply different procedures provided by Section 302 and the 1964 Act, it is hardly surprising that appellant raises equal protection arguments. Alleging there is no rational basis for the discrimination against prisoners, he urges the court either to declare Section 302 unconstitutional or, in order to save it, to read into it the bulk of the protections afforded under the 1964 Act.

### A. Equal Protection.

Appellees argue that the distinction between Section 302 and the 1964 Act can be justified because the latter provides for commitment of a person not otherwise in custody. The argument runs that, since appellant was already in prison serving a sentence, transferring him to St. Elizabeths "is an administrative matter which rests within the sound discretion of the prison authorities." [11]

[2] We agree that prison authorities have wide discretion to decide on appropriate methods of handling their wards. However, such discretion is not unlimited, and where "paramount federal constitutional or statutory rights" come into play the prison regulations must conform to them. Johnson v. Avery, 393 U.S. 483, 486, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Concededly the authorities could not transfer a prisoner to St. Elizabeths absent some finding of mental illness. As to persons generally, Congress has erected in the 1964 civil commitment Act a full system of procedural safeguards before such a finding can be made. The appropriate question here is whether incarceration in a mental hospital is sufficiently different from incarceration in a prison to require the same or similar safeguards.

We answer the question in the affirmative. We think that prisoner transfers to a mental hospital do require protective procedures at least similar to those provided in the 1964 Act. First, although regrettable, it is a fact that there is a stigma attached to the mentally ill which is different from that attached to the criminal class in general. Thus a prisoner transferred to St. Elizabeths might well be described as "twice cursed." United States ex rel. Schuster

---

9. *Ibid.*

10. 21 D.C.Code § 547.

11. Brief for appellees, p. 7. Appellees would limit such transfers to a term of confinement no greater than the maximum term of imprisonment to which the prisoner was sentenced.

It could be argued that another justification for the differences between § 302 and the 1964 Act is the fact that prisoners have committed crimes. However, this theory has no validity since the decision of the Supreme Court in Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). There the Court made clear that prior criminal conduct did not justify substantial differences in the procedures by which a person was committed to a mental hospital. This court, in Cameron v. Mullen, 128 U.S.App.D.C. 235, 243, 387 F.2d 193, 201 (1967), cited *Baxstrom* for the proposition that prior criminal conduct "cannot justify denial of procedural safeguards" in determining whether a person is mentally ill. And in Bolton v. Harris, 130 U.S.App.D.C. 1, 8, 395 F.

2d 642, 649 (1968), we reiterated that "in view of *Baxstrom* and the 1964 Act prior criminal conduct cannot be deemed a sufficient justification for substantial differences in the procedures and requirements for commitment  *  *  *."

The point here is simply that the judicial procedures in the 1964 Act were designed to afford the fullest possible ventilation of the question whether a person is mentally ill. Unless we can say with assurance that commission of a crime is a highly reliable indicator of mental illness, prior criminal conduct cannot justify aborting the full judicial inquiry into the question of mental illness. Since we have not been referred to any authority which indicates such a close nexus between criminal conduct and mental illness, and since there is no indication that Congress made such a determination when it enacted § 302, we think that to distinguish between criminals and non-criminals, denying to the former the very important safeguards which insure a full and fair hearing on the issue of mental illness, would be arbitrary.

v. Herold, 2 Cir., 410 F.2d 1071, 1073 (1969).

Second, there are numerous restrictions and routines in a mental hospital which differ significantly from those in a prison. Since these restrictions and routines are designed to aid and protect the mentally ill, persons, even prisoners, who do not have need for such discipline should not be subjected to it. Third, there is a definite possibility that transfer to St. Elizabeths might result in a prisoner being incarcerated for a longer time than if he remained at Lorton. Appellees were unable to assure us that inmates residing in St. Elizabeths would be called for parole hearings and considered for release on parole.[12]

Most importantly, however, we are concerned that a person mistakenly placed in a mental hospital might suffer severe emotional and psychic harm. As the Second Circuit, in a similar prisoner transfer case, so graphically put it:

"In considering the problem posed we are faced with the obvious but terrifying possibility that the transferred prisoner may not be mentally ill at all. Yet * * * he will be exposed to physical, emotional and general mental agony. Confined with those who are insane, told repeatedly that he too is insane and indeed treated as insane, it does not take much for a man to question his own sanity and in the end to succumb to some mental aberration. * * * "

United States ex rel. Schuster v. Herold, *supra,* 410 F.2d at 1078.

These factors make it understandable that many prisoners would fiercely resist being moved out of a prison into a mental hospital. We think the differences in the two types of incarceration are simply too great to treat transfer to a mental hospital as a routine administrative procedure. The consequences of a mistake are sufficiently great to warrant giving prisoners the same protections as non-prisoners receive. We thus follow the reasoning of the Second Circuit in United States ex rel. Schuster v. Herold, *supra,* and reach the same conclusion.[13]

We turn to the question whether Section 302 can be saved by reading into it the protections of the 1964 Act.

## B. Construing Section 302.

Statutory construction can be a flexible tool. Its limits were noted by the Supreme Court in Scales v. United States, 367 U.S. 203, 211, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961), where the Court pointed out that, although a court "will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute." Here we think that reading the bulk of the 1964 Act's protections into Section 302 does not pervert its purpose; such construction is consistent with its purpose and imposes no undue burden on government.

The purpose of Section 302 is to provide appropriate treatment for a mentally ill prisoner by transferring him to a mental hospital. Written into Section 302 is the safeguard that such a transfer cannot be made without a prior finding of mental illness by the prison authorities and by a qualified psychiatrist. The provisions in the 1964 Act for judicial hearing and jury trial supplement this safeguard and thus are entirely consistent with Section 302's beneficial purpose to insure against mistaken transfers of prisoners to St. Elizabeths.

---

12. It is apparently the practice in some jurisdictions to refuse to consider an inmate for parole while he is in a mental hospital. *See* United States ex rel. Schuster v. Herold, 2 Cir., 410 F.2d 1071 (1969).

13. Another possible justification for the shortcut procedure of § 302 might be concern for the smooth functioning of prison routine in emergencies caused by psychotic behavior. However, since we read into § 302 the bulk of the procedures in the 1964 Act, *see* Section B *infra,* the prison authorities have available 21 D.C. Code §§ 520–528 which provide for emergency hospitalization in such circumstances.

■ Thus, in order to save it from constitutional attack,[14] we construe Section 302 to require that, after the prison authorities indicate a belief that a prisoner is mentally ill and the psychiatrist concurs, a prisoner is entitled to a judicial hearing and, if requested, a jury trial before he can be involuntarily transferred.[15] At such a hearing he is entitled to the same rights of notice, counsel, cross-examination, etc. as are provided for in the 1964 Act.[16] Similarily, we construe Section 302 to require the procedures for release from the hospital which are embodied in the 1964 Act.[17] *See* Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968).

14. We have dealt with the statutes here in the context of equal protection. The guarantee of equal protection applies to the federal government, Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), and has been applied in cases involving the 1964 civil commitment Act, Bolton v. Harris, *supra* Note 11, 130 U.S.App.D.C. at 4 n. 3, 395 F.2d at 645 n. 3. Our disposition makes it unnecessary to reach the substantial question whether, equal protection considerations aside, due process requires a judicial hearing. *Compare* Darey v. Sandritter, 9 Cir., 355 F.2d 22 (1965); Jones v. Pescor, 8 Cir., 169 F.2d 853 (1948).

15. We are aided in so construing § 302 by the undesirable consequences of declaring it unconstitutional. That would leave a hiatus until Congress passed a new law; further, since any new law, to comport with equal protection, would have to provide protections similar to those we have read into § 302, it seems needless to create a hiatus in such circumstances. We have not found anything in the legislative history of the 1964 Act which indicates that Congress explicitly intended to deny its protections, for any stated reason, to prisoners.

16. We do not require that the prisoner be given a hearing before the Mental Health Commission prior to his judicial hearing. Since he is given an examination by the psychiatrist provided for in § 302, we think the requirements of equal protection are satisfied simply by requiring a judicial hearing.

## II

■ On March 16, 1967, appellant was transferred from Lorton to St. Elizabeths without a judicial hearing; thus his rights were violated by that transfer. He was returned to Lorton in August 1967, prior to the filing of the present amended complaint. In that complaint he sought an injunction against any future transfers without a hearing. Appellant's repeated commitments without hearing to mental institutions [18] and the position of appellees in this case make clear that District of Columbia prison officials view the non-hearing procedure, which we have held invalid, as the proper one for committing prison inmates to a mental

A person civilly committed is entitled to a hearing on the issue of mental illness and on the issue of dangerousness, the statutory standard of dangerousness being whether "because of [his] illness [he] is likely to injure himself or other persons * * *." 21 D.C.Code § 545. For a prisoner the standard of mental illness would be the same as for all other persons, but the appropriate standard of dangerousness would be whether, because of his illness, he is likely to injure himself or to cause a not insubstantial disruption of prison routine.

We are, of course, dealing here with a transfer for a period no longer than the term of appellant's imprisonment. Any prisoner committed to a mental hospital beyond the time of his imprisonment would have to be committed under the full procedures set out in the 1964 Act. Baxstrom v. Herold, *supra* Note 11.

17. These are set out in 21 D.C.Code § 546 *et seq.* The prisoner would be returned to the Department of Corrections.

18. Some time after this case was heard in the District Court appellant was again transferred to St. Elizabeths; at some later time he was transferred to a federal mental hospital in Missouri. At the time of oral argument before this court appellant was back at Lorton. While these facts emerged at oral argument and were not in the record before the District Court, they are unchallenged, and should not be ignored. They underscore the wisdom of the "continuing controversy" limitation on the mootness doctrine.

hospital.[19] The simple fact that appellant was back in Lorton at the time this case was heard does not relieve this court of the obligation to appraise the validity of appellees' continuing policy and to protect the rights of appellant, who is still in prison and subject to that policy. "[C]ases are not made moot by the expiration of orders of brief duration capable of future repetition." Friend v. United States, 128 U.S.App.D.C. 323, 325, 388 F.2d 579, 581 (1967).

Since there is no assurance that appellant will not again be transferred to a mental hospital, we must remand the case to the District Court for an appropriate remedy. If on remand it appears that appellant is back in a mental hospital, he would be entitled to an order releasing him to the custody of the prison authorities until such time as a proper hearing is held.[20] If, on the other hand, he is not in a mental hospital, appellant should be permitted to amend his complaint to request relief by declaratory judgment, unless the District Court determines that the injunction for which appellant has prayed is necessary to protect his rights.

Remanded for proceedings consistent with this opinion.

WILBUR K. MILLER, Senior Circuit Judge (concurring in part and dissenting in part):

The appellant, Roland E. Matthews, Jr., convicted of manslaughter, was sentenced to imprisonment for a term of 4 to 14 years on October 29, 1965. He was sent to Lorton Reformatory where his behavior constituted such a disciplinary problem that on March 23, 1967, he was transferred to St. Elizabeths Hospital, a mental institution, for psychiatric treatment. He was returned to Lorton on August 8, 1967, and was still there when the case was tried in the District Court.

On June 16, 1967, while he was in St. Elizabeths, Matthews filed this suit in the United States District Court for the District of Columbia against Kenneth L. Hardy, Director of Corrections, and the District of Columbia Board of Commissioners in which he alleged he had been illegally committed to St. Elizabeths, but prayed only that certain personal property taken from him at the time of his incarceration be returned to him.

Later, and after Matthews had been returned to Lorton, an attorney appointed to represent him filed on May 6, 1968, an amended complaint supplanting the original which had been unartfully drawn by the appellant himself. The amendment reiterates the allegation that Matthews' transfer to St. Elizabeths had been illegal, complains that he is separated from the general prison population at Lorton, and that his personal property had been unlawfully taken from him. The prayer is as follows:

"(1) that this Court enjoin defendants from transferring plaintiff to Saint Elizabeth's Hospital without judicial proceedings to determine whether plaintiff is mentally ill;

"(2) that this Court issue an order in the nature of a Writ of Mandamus directing the defendant [sic]

"(a) to transfer the plaintiff back to the general prison population at the Lorton Reformatory, Lorton, Virginia

---

19. Moreover, the present relevant directive issued by the Office of the Director of the District of Columbia Department of Corrections directs that "[p]ersons developing mental or nervous reactions with long remaining sentences, *should*, of course, be processed for eventual transfer either to the Federal hospital at Springfield or to St. Elizabeth's Hospital." DCDO 6600.1, attached as Exhibit C to appellees' motion to dismiss filed in the District Court. (Emphasis added.)

20. In the interest of prison and hospital economy, it would be permissible to retain appellant at the hospital for a short period of time if a prompt hearing could be held. The emphasis in such a determination is the likely *promptness* of the hearing, and if the court is not satisfied that a hearing could be arranged quickly, it should order appellant returned to Lorton pending the hearing.

"(b) to return forthwith the personal property taken from plaintiff without due process of law.

"(3) that this Court grant judgment against the defendants for the sum of fifty five [*sic*] thousand dollars ($55,-000.00), interest, and costs.

"(4) that this Court grant such other relief as the Court shall deem necessary to protect plaintiff's Constitutional rights."

Affidavits were filed by both sides and summary judgment in favor of the appellees was awarded by the District Court. Matthews appeals. My colleagues affirm the denial of monetary and mandamus relief; but they hold that Matthews' rights were violated when he was transferred to St. Elizabeths without a judicial hearing (although there was no such issue), and remand the case to the District Court "for an appropriate remedy."

I concur in that portion of the majority opinion which affirms the denial of monetary and mandamus relief, but I dissent from the action of the majority in remanding "[f]or the reasons stated in Part II *infra*, * * * this aspect of the case for appropriate action by the District Court."

The pleadings present an insurmountable obstacle to this action of the majority: there was no justiciable issue presented as to whether the appellees should be enjoined from returning Matthews to St. Elizabeths, and so the District Court had no choice but to rule as it did on that aspect of the case. Matthews was in Lorton when he filed the amended complaint. There is no allegation in it, nor is there any proof or even a suggestion in the record, that the appellees threatened to, or were about to, return the appellant to St. Elizabeths or that they contemplated doing so. In spite of this, it is prayed in the amended complaint that the court enjoin appellees from transferring Matthews to St. Elizabeths without a judicial inquiry as to his mental condition. Of course, the District Court could not enjoin the appellees from taking a step which was neither threatened nor contemplated. A court is not authorized to operate in that fashion.

It is interesting to note the reasons which the majority give for remanding the case to the District Court for further action with respect to any future transfer to St. Elizabeths. They refer to "[a]ppellant's repeated commitments without hearing to mental institutions," but admit in footnote 18 that there is nothing in the record to show appellant has been repeatedly committed without hearing to mental institutions. They say in footnote 18:

"Some time after this case was heard in the District Court appellant was again transferred to St. Elizabeths; at some later time he was transferred to a federal mental hospital in Missouri. At the time of oral argument before this court appellant was back at Lorton. While these facts emerged at oral argument and were not in the record before the District Court, they are unchallenged, and should not be ignored. * * * "

As the "facts" recited in footnote 18 are not in the record, the majority have no judicial information on the subject and are clearly unjustified in using those "facts" as a basis for saying in the text of their opinion that appellant has repeatedly been committed without hearing to mental institutions, and in basing their decision thereon.

Finally, the majority say:

"Since there is no assurance that appellant will not again be transferred to a mental hospital, we must remand the case to the District Court for an appropriate remedy. * * * "

I suggest that this appeal is from the judgment entered by the District Court. We must decide it on the record made in that court, and are not authorized to speculate as to what may have happened after that record was closed, or to base a decision on such speculation.

Matthews was an inmate of Lorton at the time the District Court entered its judgment. There is nothing in the record

to indicate or intimate that some time after that he was again transferred to St. Elizabeths and then to a federal mental hospital in Missouri. The majority statement that these things happened has no basis whatever in the record and is pure conjecture.

I cannot say too emphatically that what may have happened after the District Court's judgment was entered has no proper place in our consideration of this appeal. As I said in another case, I suppose I am hopelessly old-fashioned, but I adhere to the view that an appellate court has no right to go beyond the record and decide a case on what it thinks may have happened after the record was closed.

Another phase of the majority opinion requires comment. It is that which writes into 24 D.C.Code § 302 provisions of the civil commitment act, 21 D.C.Code § 501 *et seq.*, and so holds that hereafter prison authorities may not transfer a prisoner to a mental hospital during his term, as authorized by § 302, unless a judicial inquiry into the prisoner's mental condition authorizes that action.

In the first place, this portion of the majority opinion is *obiter dictum* because it is unnecessary to decision. This is a simple case which can and should be decided in the manner I have indicated, without reference to §§ 302 and 501 *et seq.* There is no necessity here for a guideline opinion as to the procedure to be followed in any future transfer from Lorton to St. Elizabeths when the complaint did not allege, and the appellant did not attempt to prove, that such a transfer was proposed, threatened or even contemplated by the appellees.

In the second place, in addition to being *dictum,* the phase of the majority opinion under discussion is wrong as well, as will appear from what follows. While Matthews was serving his sentence in Lorton he was transferred to St. Elizabeths in strict accordance with 24 D.C. Code § 302 (1967), which is as follows:

"Any person while serving sentence of any court of the District of Columbia for crime, in a District of Columbia penal institution, and who, in the opinion of the Director of the Department of Corrections of the District of Columbia, is mentally ill, shall be referred by such Director to the psychiatrist functioning under section 24–106, and if such psychiatrist certifies that the person is mentally ill, this shall be sufficient to authorize the Director to transfer such person to a hospital for the mentally ill to receive care and treatment during the continuance of his mental illness."

My colleagues say, erroneously I think, "On March 16, 1967, appellant was transferred from Lorton to St. Elizabeths without a judicial hearing; thus his rights were violated by that transfer." As I have said, they read into § 302 the provisions of the 1964 civil commitment act, 21 D.C.Code § 501 *et seq.* (1967), and construe it as requiring a judicial hearing and, if requested, a jury trial before a prisoner may be transferred to a mental hospital. In so holding, the majority seem to have been largely motivated by what they say is the "definite possibility that transfer to St. Elizabeths might result in a prisoner being incarcerated for a longer time than if he remained at Lorton."

There is no basis for such apprehension, and so there is no need to revamp § 302 to guard against the result feared by my colleagues. As Matthews was serving a sentence in Lorton when he was transferred to St. Elizabeths under § 302, and the transfer was an administrative matter within the sound discretion of the prison authorities, his confinement in St. Elizabeths could not last longer than the term of imprisonment to which he had been sentenced. If when his term expires he were still in St. Elizabeths, he could be retained thereafter only pursuant to civil commitment proceedings under § 501 *et seq.*

This is not the first time a court has been confronted with the argument that a prisoner cannot, during his term, be transferred to a mental hospital unless in a judicial proceeding it is first deter-

mined that his mental condition justifies such transfer. In Darey v. Sandritter, 355 F.2d 22 (1965), the Ninth Circuit considered a petition for a writ of habeas corpus by a prisoner who, during his term, was transferred to a mental hospital by prison administrative action. He claimed he was illegally detained because a hearing as to whether he should have been sent to the hospital had not been conducted. In denying the prisoner's contention the court said:

"It is not appellant's hospitalization which deprives him of his liberty. The deprivation stems from the judgment of conviction and the sentence of confinement. The hospitalization does not result from a separate order or judgment which is independent of the penal judgment and might extend a legally imposed term of restraint. Whether a prisoner, during his lawful term, should or should not receive medical treatment in suitable environs must ordinarily be determined by custodial authorities in the proper exercise of a sound discretion. [Cases cited.] * * * "

A similar contention was before the court in Jones v. Pescor, 169 F.2d 853 (1948). The Eighth Circuit rejected it as "wholly without merit," and said, at page 856:

" * * * As to the contention that appellant's transfer to and confinement in the U. S. Medical Center were illegal and violative of due process, because he was not given a hearing on his need for such care and treatment, we have previously held that the determination of a prisoner's mental condition and need for treatment pursuant to 18 U.S. C.A. § 876 and without judicial trial, does 'no violence to his constitutional rights.' Douglas v. King, 8 Cir., 110 F.2d 911, 913 [127 A.L.R. 1200]. And again, we have said that Congress undeniably has the power to make such provision for the medical care and treatment of federal prisoners and to set up such administrative machinery for determining a prisoner's need for care and treatment and the nature

thereof, without the right to a formal hearing, as it deems advisable. Estabrook v. King, 8 Cir., 119 F.2d 607, 609, 610."

These decisions of the Eighth and Ninth Circuits seem to me to be sound and, in my opinion, should be followed here. I see no reason for intruding into prison procedures and enlarging the purpose of Congress expressed in § 302 by reading into that section the provisions of § 501 *et seq.*, so I dissent from the action of the majority in doing so.