Cecil H. EVANS, Jr.

v.

E. L. PADERICK et al.

Civ. A. No. CA 77–0396–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 16, 1977.

Cecil H. Evans, pro se.

Burnett Miller, III, Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Cecil H. Evans, Jr., an inmate at the Virginia State Penitentiary, proceeding pro se, brings this civil rights action in forma pauperis pursuant to 42 U.S.C. § 1983 (1970). Jurisdiction of the Court is attained under 28 U.S.C. § 1343(3) (1970). Defendant has moved to dismiss the complaint and has submitted with said motion supporting affidavits. Since these affidavits are considered by the Court, defendant's motion will be treated as one for summary judgment.

On the date of August 10, 1977, plaintiff was advised of his right to respond to the motion but he has failed to do so.

Plaintiff complains that he was committed to a mental institution, Central State Hospital, without being brought before a Magistrate in a civil commitment proceeding. He asks that this Court guarantee that he not be committed in the future without first being brought before a judicial officer.

■ Defendant urges that the case is moot, because plaintiff has been returned to the penitentiary. The Court is of the view that the case is not moot. Defendant's own affidavits reveal that plaintiff has had a history of psychiatric difficulties, for which he has twice been committed, and he continues to need psychiatric care. The possibility of future commitments is not therefore so remote and speculative as to render plaintiff's prayer for equitable relief moot. *See Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

On the merits, defendant admits that plaintiff was not permitted to attend the commitment hearing. Defendant argues, however, that this certification hearing nonetheless comported fully with the requirements of Virginia law, and the United States Constitution. *See* Va.Code § 37.1–67.3 (1976).

■ This Court is not persuaded that Virginia law permits a civil commitment hearing to be conducted without the presence of the person whose commitment is sought. Virginia Code § 37.1–67.3 states in part:

"If the Judge *having observed the person so produced* . . . shall specifically find that such person (a) presents an imminent danger to himself or others as a result of mental illness, or, (b) otherwise been proven to be so seriously mentally ill as to be substantially unable to care for himself, and (c) that there is no less restrictive alternative to institutional confinement and treatment and that the alternatives to involuntary hospitalization were investigated and were deemed not suitable, he shall by written order and specific findings so certify and order such person removed to a hospital or other facility . . . ." [emphasis supplied]

This passage seems to the Court to require plaintiff's presence at any commitment proceeding.

Even if Virginia law permitted the commitment procedure employed in the instant case, it is clear that the Federal Constitution would require the presence of the person whose involuntary commitment is sought prior to an order of hospitalization being entered. The most elementary notions of due process require that an individual be permitted to be heard, and to hear the evidence adduced against him, before actions are taken by the state which substantially deprive him of his liberty. Therefore, the Court construes the Virginia involuntary commitment statute to require the presence of the person to be committed at the civil hearing.

Defendant asserts that the transfer of an inmate, for medical reasons, from a prison to a mental institution lies within the sound discretion of prison administrators, and does not implicate due process protections.

Defendant relies on *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) in support of his position. In those cases, the Supreme Court held that the transfer of an inmate from one prison to another did not implicate a liberty interest sufficient to invoke due process protections absent a state law or practice which conditioned such transfers on proof of specific facts. But *Meachum* and *Montanye* are readily distinguishable. First, plaintiff was transferred not to another prison institution, but to a psychiatric hospital. Second, that transfer is clearly conditioned, by state law, on proof of the plaintiff's need for treatment. Thus, state law provides a "liberty" interest sufficient to require a due process hearing under such circumstances.

■ Defendant suggests in his brief that the civil commitment procedure mandated by § 37.1–67.3 of the Virginia Code is not required when the person to be committed is a state prisoner. The statute, however, makes no such exception, and it is beyond this Court's power to do so by judicial fiat. *Cf., United States v. Herold,* 410 F.2d 1071 (2d Cir. 1969), *cert. denied,* 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969) (convict transferred from prison to mental institution deprived of equal protection by the disparity between procedural protection afforded civilians facing involuntary commitment and those given the inmate); *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966) (no rational basis for distinguishing between the "civilly and criminally insane.") Moreover; transfer from a prison to a mental institution clearly implicates a liberty interest within the meaning of the Fourteenth Amendment to the Constitution of the United States. *Matthews v. Hardy,* 137 U.S.App.D.C. 39, 420 F.2d 607, *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1231, 25 L.Ed.2d 423 (1970); *Sites v. McKenzie,* 423 F.Supp. 1190 (N.D.W.Va. 1976). A person incarcerated for a criminal offense does not thereby lose all constitutional protection for the duration of his sentence. Placement in a mental institution constitutes a serious deprivation of liberty, *O'Conner v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), and that deprivation is substantial even for a person already confined in a penal institution. As the *Matthews* court stated:

"[First] . . . it is a fact that there is a stigma attached to the mentally ill which is different from that attached to the criminal class in general . . . Second, there are numerous restrictions and routines in a mental hospital which differ significantly from those in a prison. Since these restrictions and routines are designed to aid and protect the mentally ill, persons, even prisoners, who do not have need for such discipline should not be subjected to it. Third, there is a definite possibility that transfer to [a mental hospital] might result in a prisoner being incarcerated for a longer time

. . .

Most importantly, however, we are concerned that a person mistakenly placed in a mental hospital might suffer severe emotional and psychic harm. 420 F.2d at 610–11.

The Court construes the Virginia involuntary commitment statute to require the presence of a prisoner whose commitment is sought at a civil proceeding. On defendant's admission, the Court concludes that plaintiff is entitled to summary judgment as a matter of law.

An appropriate order will issue, enjoining the defendant from attempting to have plaintiff committed to any mental institution without first holding a hearing at which plaintiff is present and in which plaintiff is permitted to participate.