**In re Melvin W. ALEXANDER, Patient.**
**No. 20366.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 21, 1966.

Decided Jan. 27, 1967.

---

Mr. William R. Stratton, Washington, D. C. (appointed by the District Court), for appellant.

Mr. Robert A. Ackerman, Atty., Dept. of Justice, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and William M. Cohen, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

After a jury determination that he was mentally ill and likely to injure himself or others if allowed to go free, appellant was committed to St. Elizabeths Hospital under the District of Columbia Hospitalization of the Mentally Ill Act.[1] He at-

1. P.L. 88–597, 78 Stat. 944 (1964), revised and codified, P.L. 89–183, 79 Stat. 751 (1965), 21 D.C.Code § 501 et seq., 1961 Ed. (Supp. V. 1966).

Title 21, Section 501, District of Columbia Code, provides in pertinent part:
Definitions.
As used in the chapter:
    *     *     *     *     *
"mental illness" means a psychosis or other disease which substantially impairs the mental health of a person;
"mentally ill person" means a person who has a mental illness * * *

Title 21, Section 545(b), District of Columbia Code, provides in pertinent part:
(b) If the court or jury, as the case may be, finds that the person is not mentally ill, the court shall dismiss the petition and order his release. If the court or jury finds that the person is mentally ill and, because of that illness, is likely to injure himself or other persons if allowed to remain at liberty, the court may order his hospitalization for an indeterminate period, or order any other alternative course of treatment which the court believes will be in the best interests of the person or the public. * * *

Title 21, Section 562, District of Columbia Code, provides:
*Medical and psychiatric care and treatment; records.* A person hospitalized in a public hospital for a mental illness shall, during his hospitalization, be entitled to medical and psychiatric care and treatment. The administrator of each public hospital shall keep records detailing all medical and psychiatric care and treatment received by a person hospitalized for a mental illness and the records shall be made available, upon that person's written authorization, to his attorney or personal physician. The records shall be preserved by the administrator until the person has been discharged from the hospital.

tacks this commitment on two grounds: (1) that the District Court erred in instructing the jury that it could consider a mental defect to be a mental illness under the statute, and (2) that the District Court erred in ordering appellant's hospitalization at St. Elizabeths in the absence of a showing that he would receive medical and psychiatric treatment there.

Two psychiatrists testified at appellant's trial, one a staff physician from St. Elizabeths, the other a physician member of the Mental Health Commission. Both of these witnesses testified that appellant had a mental defect and that in addition he suffered behavioral reactions. The diagnosis of appellant was mentally deficient, idiopathic, moderate, with an I.Q. of 49. Testimony was also adduced that appellant has a history of antisocial behavior involving the same type of action which precipitated his present hospitalization. The psychiatrists concluded that appellant was mentally ill within the meaning of the statute and that as a result of such illness, he was likely to injure himself or others if allowed to go free.

Under appellant's first assignment of error, he argues that to sustain a civil commitment of a mentally defective person, it is not enough to find simply that he is a mental defective, even when such condition is accompanied by danger-productive behavior; rather, appellant argues, there must be evidence in the record that his danger-productive behavior was the result of a mental illness, which illness may exist independently or interdependently with the mental deficiency. Appellant argues that the trial court's instruction as to what constitutes mental illness under the statute left the jury free to commit appellant as a mental defective who has exhibited danger-productive be-

havior, without the jury finding that appellant was in fact mentally ill under the statute.

Although the government's trial counsel argued to the jury and the District Court that a mental defect in and of itself is a mental illness under the statute, the government has apparently abandoned that contention upon appeal, arguing instead that commitment is justified under the statute where a mentally deficient person has a danger-productive mental illness which is related to the mental deficiency and of which the deficiency may be one component. It argues that there is ample evidence in the record to support a conclusion that appellant is suffering from a mental illness within this definition.

We agree with the parties that it is not enough to commit a person under the Act to find that he is mentally deficient, even when such condition is accompanied by some antisocial behavior.[2] To commit a mentally deficient person under the Act, it is necessary for the government to prove by a preponderance of the evidence that the individual involved suffers from a mental illness, whether related or unrelated to the mental deficiency, and that the danger-productive behavior of the individual results from the mental illness.

Although it is true that the psychiatrists in this case were reluctant to label appellant's illness a psychosis, or in fact to attempt to fit it specifically into any of the various classes of mental illness recognized by the American Psychiatric Association, the thrust of their testimony was that appellant was suffering from a condition which substantially impaired his mental health, that this con-

2. This conclusion is more than adequately demonstrated by reference to the legislative history of the Hospitalization of the Mentally Ill Act. The initially proposed definition of mental illness expressly excluded persons who were mentally deficient, but this exclusion was subsequently deleted in response to the overwhelming expert testimony that mental illness and mental deficiency often coexist in an individual and that such persons should not be excluded from the protections of the Act. See, e. g., Hearings on S. 935 Before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 88th Cong., 1st Sess., 75, 77, 82, 87, 128, 133 (1963).

dition was interrelated with his mental deficiency, and that his antisocial behavior occurred as a result and manifestation of this underlying mental illness. We are satisfied, after a complete review of the record, and after a thorough consideration of appointed-counsel's well-reasoned arguments, that there was sufficient evidence for the jury to find that, in addition to being mentally deficient, appellant was suffering from a mental illness. To the extent that the District Court's instruction reflected the government trial counsel's view that a mental deficiency in and of itself constitutes a mental illness, such instruction was improper and not to be followed. Despite some ambiguity created by the reference to this theory, we believe that the court's charge, taken in its entirety, made it clear to the jury that many mentally deficient persons get along perfectly well in society and that the jury could not commit appellant simply because of his mental deficiency.

With regard to appellant's second assignment of error that an individual may not be civilly committed without a showing by the government at trial that he will receive treatment while so committed—we do not believe it is necessary to decide that question here since it is apparent from the record that treatment will be available to appellant at St. Elizabeths. The staff psychiatrist from St. Elizabeths testified that the hospital offered custodial care and a controlled environment and that this would include "treatment, guidance, and therapy." In addition, there is testimony in the record that appellant's objectionable behavior did not manifest itself while he was in the hospital. Under these circumstances, we believe that whatever the abstract merits of appellant's contention may be on this point, the availability of treatment has in fact been demonstrated in the present case. The decision of the District Court is therefore

Affirmed.