**In re Magnolia ALEXANDER.**
**In re Andrew ALDAMA.**
**Mental Health Nos. 280–71, 284–71.**

United States District Court,
District of Columbia.

Jan. 18, 1972.

Karen Moore, Jane Lamb, Public Defender Service, Washington, D. C., for respondents.

Lester B. Seidel, Asst. U. S. Atty., for petitioner.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Andrew Aldama and Magnolia Alexander, two patients currently awaiting final court action on a petition asking that they be involuntarily committed under the provisions of the Hospitalization of the Mentally Ill Act [1] have moved to dismiss those petitions on the grounds that the statute under which they are brought is unconstitutionally vague. Specifically, these patients argue that the statutory standard for civil commitment, requiring *inter alia* that one be "likely to injure himself" or others, gives no guidance to those charged by the law with its administration. As a result, these patients claim they are being threatened with indefinite confinement in a mental institution without due process of law. For the reasons appearing hereinafter the Court denies these motions to dismiss the aforesaid judicial petitions for hospitalization and holds that this statute does not suffer from the infirmity of unconstitutional vagueness.

The Court commences its consideration of the respondents' contentions by recognizing that it is a fundamental principle that whenever possible courts should construe statutes so as to uphold their constitutionality. United States v. Vuitch, 402 U.S. 62, 70, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971).

It is equally well established "that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges or jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." Giaccio v. Pennsylvania, 382 U.S. 399, 402–403, 86 S.Ct. 518, 15 L.Ed.2d 447 (1965). When liberty is at stake, as it is for those who would be involuntarily committed under this Hospitalization Act [2] it matters little that the law attaches a "civil" rather than "penal" label to the proceeding. All such statutes must survive the challenge that they are unconstitutionally vague. [3]

It is the contention of the moving parties herein, patients whose confinement is at issue, that the provisions for involuntary civil commitment of the Hospitalization of the Mentally Ill Act, D.C.Code § 21–501 et seq. (1967), fail to meet this test. Specifically, it is claimed that the standard used throughout this Act, namely, that a person shall be confined if he is reasonably believed to be "mentally ill, and because of the illness is likely to injure himself or other persons if allowed to remain at liberty," D.C.Code § 21–541 [4] gives no guid-

---

1. D.C.Code § 21–501 et seq. (1967).

2. D.C.Code § 21–501 et seq. (1967).

3. Giaccio v. Pennsylvania, 382 U.S. 399, 402, 86 S.Ct. 518, 15 L.Ed.2d 447 (1965).

4. Variations of this "likely to injure" standard appear throughout the Act. *See, e. g.,* D.C.Code § 21–521 (1967) (initial detention authorized if person is mentally ill and "likely to injure himself or others if allowed to remain at lib-

ance to those who would administer the law.[5]

Counsel for these patients acknowledge that many aspects of this statutory formulation are sufficiently definite to pass constitutional muster. Thus, it is recognized that the prerequisite of "mental illness" has been adequately defined[6] as has the causal connection required for a mental illness "likely" to injure.[7]

Therefore, the critical issue is whether or not the legislature has defined the meaning of "to injure himself or others" with sufficient clarity to resist an attack that on its face such a standard is unconstitutionally vague.

In United States v. Vuitch, *supra*, the Supreme Court was presented with an argument similar to the one confronting this court today. The petitioners therein protested that the bald use of the word "health" in the D.C. anti-abortion statute,[8] without further explication, was so imprecise as to run afoul of the Due Process Clause. The Supreme Court, using a common-sense approach, and referring to Websters dictionary definition of health, rejected that argument.

Using that same approach, this court reaches this same conclusion about the phrase "to injure himself or others". Websters has no difficulty giving a definition of these words[9] which are in ordinary and common usage, and neither would those charged with administering this law. While this phrase is not an absolute model of clarity, this court agrees with Chief Judge Bazelon when he urged in an analogous context that such "unavoidably" indefinite concepts be refined as the Congress intended, "on a case-by-case basis, in the traditional common-law fashion." Cross v. Harris, 135 U.S.App.D.C. 259, 263, 418 F.2d 1095, 1099 (1969).[10]

The Hospitalization Act places primary responsibility for administering its provisions upon psychiatrists and ultimately the judge and jury. Psychiatrists bring to the determination of whether a person is likely as a result of mental illness to injure himself, an expertise in applying this statute which provides some degree of protection to those who might otherwise be arbitrarily committed. This court stands ready to review their decisions promptly. *See* In re (Johnnie) Barnard, 455 F.2d 1370.

erty") ; D.C.Code § 21–544 (1967) (Mental Health Commission shall report to the court if, because of mental illness, the person is "likely to injure himself or other persons if allowed to remain at liberty") ; D.C.Code § 21–545 (1967) (indefinite confinement authorized if trial court finds that, because of mental illness, he is "likely to injure himself or other persons if allowed to remain at liberty").

5. This "likely to injure" test is the statutory standard under which each of the following persons are instructed to operate :
   (a) Public Health Officers, police officers and physicians (D.C.Code § 21–521) (Supp. IV, 1971) ;
   (b) Hospital chief of service (D.C. Code § 21–527 (1967)) ;
   (c) The spouse, parents, attorney or legal guardian of the patient (D.C. Code § 21–527 (1967)) ;
   (d) The Mental Health Commission D.C.Code § 21–544 (1967)) ;

(e) The trial court and jury (D.C. Code § 21–545 (1967)).

6. *See* In re Alexander, 125 U.S.App.D.C. 352, 372 F.2d 925 (1967) ; McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962) (En Banc). *See also* D.C.Code § 21–501 (1967).

7. *See, e. g.,* Cross v. Harris, 135 U.S.App. D.C. 259, 418 F.2d 1095 (1969) ; Millard v. Harris, 132 U.S.App.D.C. 146, 406 F.2d 964 (1968) ; In re Alexander, *supra,* note 6.

8. D.C.Code § 22–201 (1967).

9. Webster's Unabridged New International Dictionary (1955) defines the modern meaning of to "injure" a person as "to do harm to; to hurt; damage; impair; to hurt or wound."

10. The court had reference to the term "dangerous" for the purposes of the Sexual Psychopath Act. 22 D.C.Code §§ 3503–3511 (1967).

(D.C.Cir., decided December 23, 1971). A prerequisite to commitment is a finding of "mental illness" by the jury, a determination which will invariably be based on expert testimony. Furthermore, even if a person is found to be mentally ill, the jury must also find that as a result of such illness, he is likely to injure himself or others. Such a finding by a jury represents a decision by society that the activities of certain mentally ill individuals will likely, as a result of that illness, be injurious. Juries constitutionally make even more serious judgments with far less guidance. *See* McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971).[11]

As additional support for its conclusion, the court notes that the Supreme Court has upheld as against an unconstitutional vagueness attack, a construction of the Minnesota "psychopathic personality" statute which required that before certain persons may be committed, they must be "likely to attack or otherwise inflict injury" on others, a requirement closely paralleling our own. *See* Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 274, 60 S.Ct. 523, 84 L.Ed. 744 (1940).

Finally, this court agrees with Chief Judge Haynsworth who stated, when the Fourth Circuit Court of Appeals upheld the definition of a "defective delinquent" under Maryland law in the face of a challenge that it was vague, "[a]lthough we recognize the risk of vagueness inherent in the terminology employed, an attempt to make precise legal definitions of medical concepts embodies a risk of over-definition. We do not think the definition now used is so vague as to offend due process." Tippett v. Maryland, 436 F.2d 1153, 1157 n. 15 (4th Cir. 1971), affirming Sas v. Maryland, 295 F.Supp. 389 (D.Md.1969), cert. granted sub nom. Murel v. Baltimore City Criminal Court, 404 U.S. 999, 92 S.Ct. 567, 30 L.Ed.2d 552 (1971).

In conclusion, the court holds that the statutory standard at issue herein, "to injure himself or other persons", is sufficiently definite to survive a constitutional challenge of vagueness. The instant motions are, therefore, denied.

11. The Supreme Court rejected the petitioners claim that the absence of standards to guide the jury's discretion in deciding whether to impose the death penalty, was constitutionally intolerable.