**UNITED STATES of America**

**v.**

**James J. BROWN, Appellant.**

**No. 24646.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 8, 1971.

Decided Jan. 8, 1973.

Rehearing Denied April 5, 1973.

Mr. Jon P. Axelrod, Washington, D. C., with whom Mr. Norman Lefstein, Washington, D. C., was on the brief, for appellant. Mrs. Barbara A. Bowman and Karen E. Moore, Washington, D. C., also entered appearance for appellant.

Mr. David G. Larimer, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant was indicted on 8 counts of robbery, 11 of assault with a deadly weapon, and one count each of rape and carrying a pistol without a license. At a trial in 1969, without a jury, by Judge William B. Jones, he was acquitted by reason of insanity. Following that acquittal, appellant was given a hearing, pursuant to 24 D.C.Code § 301(d), as construed in Bolton v. Harris, 130 U.S. App.D.C. 1, 395 F.2d 642 (1968), to determine whether he was mentally ill and ought to be retained in custody in a mental hospital.[1] He demanded a jury. The District Judge instructed the jury that the issue of mental illness *vel non* was to be determined by a preponderance of the evidence.[2] The jury found

1. Two issues are ordinarily presented: first, whether the subject is mentally ill; second, whether because of that mental illness, he will be likely to injure himself or others. 21 D.C.Code § 541(a). The "likely hazard" issue has been removed from this case by counsel's stipulation that Mr. Brown is dangerous if the jury shall find that Brown is mentally ill.

2. *See* Tr. 250-251:
It is provided by law that if you should find that the Government has established by a preponderance of the evidence the essential element, that the respondent is mentally ill, then in this case the Court may order the respondent's hospitalization for an indeterminate period of time, or order such

appellant was mentally ill, and Judge Jones ordered appellant committed to St. Elizabeths Hospital until released in accordance with 24 D.C.Code § 301(e). This appeal followed.

That preponderance standard was the one set forth in the *Bolton* opinion as applicable to this post-acquittal commitment proceeding.[3] Appellant claims: (1) In view of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), Due Process requires the reasonable doubt standard of proof in an involuntary civil commitment proceeding. (2) Equal Protection requires that proceedings to maintain detention of persons who have been acquitted of criminal charges by reason of insanity be governed by the same standard of proof as applies in proceedings for civil commitment of other mentally ill people who are thought to be dangerous. We find no error in the trial court's instructions and we affirm.

As to the standard of proof in an involuntary civil commitment proceeding, the pertinent statute provides that the court may order hospitalization or other treatment "if the court or jury finds that the person is mentally ill and, because of that illness, is likely to injure himself or other persons if allowed to remain at liberty. . . ." D.C.Code § 21–545. That provision, and its predecessor, have been construed to require a

showing by the party seeking civil commitment "by a preponderance of the evidence." Lynch v. Overholser, 369 U.S. 705, 711, 714, 82 S.Ct. 1063, 1069, 8 L. Ed.2d 211 (1962); In re Alexander, 125 U.S.App.D.C. 352, 372 F.2d 925 (1967); Bolton v. Harris, 130 U.S.App.D.C. 1, 10, 395 F.2d 642, 652 (1966).

The claim that a reasonable-doubt standard is constitutionally requisite is based on In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Winship* involved a juvenile delinquency proceeding brought under a New York statute defining delinquency as acts which, if done by an adult, would constitute a crime.

Notwithstanding that juvenile court proceedings are styled "civil" by New York, as by most other states, the Court held that the elements of due process would not be substantially different from those pertaining to the criminal process, because in either case, the risks connected with being wrong would be much the same; a substantial and involuntary deprivation of liberty combined with the odium of a stigma upon one's good name.[4] Justice Harlan's concurring opinion expatiated on the reasons for a higher standard of proof in criminal (and delinquency) cases than in civil cases, why the nature of the issues makes a difference in terms of requisite burden of proof.[5]

other alternative course of treatment as it believes will be in the best interests of the respondent or of the public.

If, however, you should find that the Government has failed to establish by a preponderance of the evidence that the respondent is mentally ill, the Court may not order the respondent's hospitalization or treatment, but will order the release of the respondent.

3. Bolton v. Harris, *supra*, 130 U.S.App. D.C. at 10, 395 F.2d at 652. We have no occasion to consider the changes subsequently wrought in § 301(d) by the D.C. Court Reform and Criminal Procedure Act of 1970, P.L. 91–358.

4. *See* 397 U.S. at 363–364, 90 S.Ct. at 1072:

"The requirement of proof beyond a reasonable doubt has [a] vital role in our

criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt."

5. *See* 397 U.S. at 370–372, 90 S.Ct. at 1076:

". . . [T]he reason for different standards of proof in civil as opposed to criminal litigation becomes apparent. In a civil suit between two private parties for money damages, for example,

We acknowledge that a substantial contention can be made that the elements of detention and "stigma" involved in involuntary commitment to a mental hospital by civil process, and the nature of the issues of mental illness and likelihood of dangerousness to self or others, requires that these issues be proved by a standard greater than the "bare" preponderance of evidence standard applicable in an ordinary civil action between two private persons.[6] However, it may be that where the issue involved is not the occurrence of an event, but the individual's mental condition and propensity ("dangerousness"), society may fairly appreciate that if it is to combine realism with humanity and fairness it might sensibly adopt a standard like "clear and convincing evidence"[7]—requiring more certitude than bare "preponderance of evidence" but not quite as much as "beyond a reasonable doubt."

In Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), the Court held that banishment by a deportation order could not permissibly be accomplished with the same "preponderance" standard as is applicable to negligence cases, but the Court did not require the same standard of proof as a criminal proceeding and instead fashioned the intermediate standard of "clear, unequivocal, and convincing evidence." 385 U.S. at 285, 87 S.Ct. 483. As the Court noted, this standard has been applied in civil cases involving allegations of particular significance.[8] See also New York Times Co. v. Sullivan, 376 U.S. 254, 285–286, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), where the Court held that "convincing clarity" is the constitutional standard requisite for a finding of malice justifying damages for a statement defaming a public official in regard to his official conduct.

We entered an order suspending consideration of this case pending determination by the Supreme Court of cases that would, we thought, have resolved the constitutional requirement for civil commitment. The Supreme Court's ultimate disposition left that issue unresolved. Murel v. Baltimore City Criminal Court, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972). Reverting to

we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. A preponderance of the evidence standard therefore seems peculiarly appropriate for, as explained most sensibly, it simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'

"In a criminal case, on the other hand, we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty. As Mr. Justice Brennan wrote for the Court in Speiser v. Randall, 357 U.S. 513, 525–526 [78 S.Ct. 1332, 1341–1342, 2 L.Ed.2d 1460] (1958):

'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—

this margin of error is reduced as to him by the process of placing on the other party the burden . . . of persuading the fact-finder at the conclusion of the trial of his guilt beyond a reasonable doubt.'

"In this context, . . . the requirement of proof beyond a reasonable doubt in a criminal case [is] bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free."

6. Lessard v. Schmidt, 349 F.Supp. 1078 (E.D.Wis., 3-judge court, Oct. 18, 1972).

7. Note, Civil Commitment of the Mentally Ill: Theories and Procedures, 79 Harv.L.Rev. 1288, 1291 (1966); Comment, Due Process for All—Constitutional Standards for Involuntary Civil Commitment and Release, 34 U.Chi.L.Rev. 633, 654–59 (1967).

8. The Court cited as instances cases involving allegations of civil fraud, adultery, illegitimacy of a child born in wedlock, lost wills, oral contracts to make bequests.

the case before us, we now conclude that it is not necessary to determine that constitutional issue. Even assuming that a standard of persuasion higher than "preponderance" is mandated for involuntary civil commitment proceedings, it is not necessarily applicable as to the issue of commitment of a person who has successfully claimed the defense of insanity in a criminal proceeding. In Lynch v. Overholser, *supra*, Justice Harlan's opinion, after noting the "elaborate procedural precautions included in the civil commitment provisions" pointed out that these did not necessarily apply to the person who successfully presses an insanity defense to a criminal proceeding. See 369 U.S. 705 at 715, 82 S. Ct. 1063 at 1069:

> The criminal defendant who chooses to claim that he was mentally irresponsible when his offense was committed is in quite a different position. It is true that he may avoid the ordinary criminal penalty merely by submitting enough evidence of an abnormal mental condition to raise a reasonable doubt of his responsibility at the time of committing the offense. Congress might have thought, however, that having successfully claimed insanity to avoid punishment, the accused should then bear the burden of proving that he is no longer subject to the same mental abnormality which produced his criminal acts. Alternatively, Congress might have considered it appropriate to provide compulsory commitment for those who successively invoke an insanity defense in order to discourage false pleas of insanity. We need go no further here than to say that such differentiating

considerations are pertinent to ascertaining the intended reach of this statutory provision.

■ Persons acquitted by reason of insanity have been determined to have been guilty, beyond a reasonable doubt of acts that impaired the safety of the community.[9] They are in a different position, at least for some purposes, from persons who have not committed any such acts but are sought to be civilly committed solely because of dangers and propensities arising from mental condition. So much was acknowledged in Bolton v. Harris as a justification for commitment of the insanity-acquitted without the predicate required for civil commitment, without either a hearing or determination of present mental condition, for the period required in order to make a determination of present condition.[10]

*Bolton* also held that the difference between the two groups did not warrant continued holding of the insanity-acquitted without a judicial hearing. The soundness of this is undisputed, and indeed, as was noted in United States v. Brawner, 471 F.2d at 996, 997 was incorporated by Congress into the 1970 legislation (cited in note 3). *Bolton* further held that the procedures culminating in the judicial determination, after hearing, on continued detention *vel non* should be substantially similar to those in proceedings, under 21 D.C.Code § 545(b), for civil commitment of the dangerous mentally ill. No question arises as to this ruling, and the insanity-acquitted person has substantially all the procedural protection of 21 D.C.Code § 545, including provisions for examina-

---

9. Lynch v. Overholser, *supra*, 369 U.S. at 714, 82 S.Ct. 1063; Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 313, 281 F.2d 943, 948 (1960).
The jury is routinely instructed: "If you find that the Government has failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense, you must find the defendant not guilty, and you should not consider any possible verdict relating to insanity."

United States v. Brawner, 153 U.S.App. D.C. 1, 471 F.2d 969, June 23, 1972, Appendix B.

10. 130 U.S.App.D.C. at 10, 395 F.2d at 651: "[A] reasonable application permits Subsection (d) to treat persons acquitted by reason of insanity differently from civilly committed persons to the extent that there are relevant differences between these two groups."

tions, notice, counsel, cross-examination, and jury trial.

What appellant seeks is a decision that changes the *Bolton* ruling that on the issue of detention the burden is on the Government to prove present mental illness by a preponderance of the evidence. Appellant seeks that change on the ground that the *Bolton* opinion erroneously assumed that this was the standard for civil commitment. If there was such an erroneous assumption it was offset by another erroneous assumption that the standard on burden of proof must be the same for both groups.

▆ There is justification for the preponderance of proof standard for confinement of the insanity-acquitted even assuming a higher standard is required prior to civil commitment for propensity. We think this justification exists even though, at the same time, we would find no justification for denying the insanity-acquitted the right to jury trial that is recognized for those involved in civil commitment proceedings.[11]

The difference between the classes for purposes of burden of proof, is in the extent of possibility and consequence of error. If there is error in a determination of mental illness that results in a civil commitment, a person may be deprived of liberty although he never posed any harm to society. If there is a similar error in confinement of an in-

sanity-acquitted individual, there is not only the fact of harm already done, but the substantial prospect that the same error, ascribing the quality of mental disease to a less extreme deviance, resulted in a legal exculpation where there should have been legal responsibility for the antisocial action.

The matter now being discussed is suffused with the broad consideration that modern standards of the insanity defense, not restricted to those who do not know right from wrong, call for the acquittal of persons who "may have meaningful elements of responsibility." [12] And over and above the difficulty of situations where the issue of mental responsibility is doubtful, we cannot wholly ignore the danger of calculated abuse of the insanity defense, referred to in Lynch v. Overholser.

Baxstrom v. Herold,[13] does not cut across our analysis. It involved a New York statute law providing that a state prisoner, at the end of his sentence, could be civilly committed without the jury trial and hearing generally required prior to civil commitment. The Court said (at 111–112, 86 S.Ct. at 763):

"For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is

11. In re Franklin, 7 Cal.3d 126, 101 Cal. Rptr. 553, 496 P.2d 465 (Cal.Sup.Ct. en banc, 1972). The court, reviewing the authorities, held that defendants acquitted by reason of insanity represented a special and exceptional class, already involved in a determination that they endangered the public safety as a result of their mental condition, to be distinguished from the class of persons subject to civil commitment because of only potential danger. The court saw no basis for distinguishing between the insanity-acquitted, and those sought to be civilly committed, in terms of right to jury trial, but held that the stringent burden resting on the Government as a condition of civil commitment did not apply to continuation of commitment of those who had established an

insanity defense. We regard that principle as sound, without passing on the question whether we would extend it as far as the California procedure, where the burden of proof is placed on the defendant, to show by a preponderance of evidence that he was insane at the time of the offense (at the criminal trial), and that he recovered his sanity (in the proceeding to determine whether the post-trial commitment, for examination, should be extended into a continuing commitment).

12. Dixon v. Jacobs, 138 U.S.App.D.C. 319, 331–333, 427 F.2d 589, 601–603 (1970) (concurring opinion).

13. 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

nearing the end of a penal term from all other civil commitments."

Insofar as *Baxstrom* pertains to procedures, its spirit may be applicable to all persons in prison.[14] But insofar as it may govern burden and standard of proof, it is limited to persons at the end of the penal term. Whatever protection can be available to society from detention of offenders has been achieved, and whatever additional protection is now needed because of present danger from mental illness must be sought from ex-convicts on the same basis as from non-convicts who are dangerous by reason of mental illness. In contrast, the insanity-acquitted present different considerations on the issue of burden of proof on detention.

■ The clear implications of the foregoing analysis, and *Baxstrom*, require, however, that when the individual has been in detention for a considerable period of time, his continued detention *vel non* should be governed by the same standard of burden of proof as applies to civil commitments. The extent of that period calls for sound discretion, would take into account *e. g.*, the nature of the crime (violent or not), nature of treatment given and response of the person, would generally not exceed five years, and should, of course, never exceed the maximum sentence for the offense, less mandatory release time.[15]

■ In the case before us that period of time has not been reached and the committal judgment of the District Court reflecting a determination based on preponderance of the evidence is sustained. We reiterate the holding of Bolton v. Harris on the preponderance standard, although we acknowledge some difference in underlying reasoning.

Affirmed.[16]

J. SKELLY WRIGHT, Circuit Judge, dissenting:

The majority opinion acknowledges that recent Supreme Court decisions [1] may well require a higher standard of proof in ordinary civil commitment proceedings than "preponderance of the evidence." [2] I agree. But the majority holds that such a higher standard need not apply in proceedings to commit a person who has been found not guilty by reason of insanity. I believe the disparity in treatment sanctioned by the majority is logically untenable, rests on unsupportable policy grounds, and is in conflict with prior decisions of this court and the Supreme Court. Therefore, I respectfully dissent.

14. Matthews v. Hardy, 137 U.S.App.D.C. 39, 420 F.2d 607 (1969).

15. *See* Dixon v. Jacobs, concurring opinion, *supra*, 138 U.S.App.D.C. at 331–333, 427 F.2d at 602–604.

16. Our judgment is without prejudice to a request for periodic examinations, such as are provided for in *Bolton*, or to a request, after an appropriate period, for determination, in line with the penultimate paragraph of our opinion, of whether further commitment can be justified under the standards pertinent to civil commitment of those dangerous by virtue of mental illness.

1. In re Winship, 397 U.S. 358, 361–368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (due process requires proof beyond a reasonable doubt in criminal and juvenile cases); Woodby v. Immigration & Naturalization Service, 385 U.S. 276, 282–286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (due process requires "clear, unequivocal,

and convincing evidence" standard of proof in deportation cases).

2. This standard has been employed in this jurisdiction in civil commitment proceedings under 21 D.C.Code § 545(b) (1967) and 24 D.C.Code § 301(d) (1967). *See* Bolton v. Harris, 130 U.S.App.D.C. 1, 10 n. 50, 395 F.2d 642, 651 n. 50 (1968); In re Alexander, 125 U.S.App.D.C. 352, 354, 372 F.2d 925, 927 (1967). But the standard has been sharply criticized as too weak. *See, e. g.*, Murel v. Baltimore City Criminal Court, 407 U.S. 355, 359, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972) (Mr. Justice Douglas, dissenting); Note, Civil Commitment of the Mentally Ill: Theories and Procedures, 79 Harv.L.Rev. 1288, 1291 (1966). And very recently a 3-judge District Court has ruled that a person may be civilly committed only upon proof beyond a reasonable doubt that he is mentally ill and dangerous. Lessard v. Schmidt, E.D.Wis., 349 F.Supp. 1078 (1972).

In Bolton v. Harris, 130 U.S.App.D.C. 1, 10, 395 F.2d 642, 651 (1968), this court held that persons acquitted of criminal charges by reason of insanity could not be civilly committed under 24 D.C.Code § 301(d) (1967) without being provided a judicial hearing with procedures "substantially similar" to those in ordinary civil commitment proceedings. These safeguards included a right to a judicial hearing on the issue of whether the defendant was presently dangerous as a result of mental illness, imposition of the burden of proof on the Government, trial by jury, and a right to counsel. *Bolton* relied heavily on this court's earlier decision in Cameron v. Mullen, 128 U.S.App.D.C. 235, 243, 387 F.2d 193, 201 (1967), where we said that "while prior criminal conduct is relevant to the determination whether a person is mentally ill and dangerous, it cannot justify denial of procedural safeguards for that determination."

Both *Bolton* and *Mullen* were based on Baxstrom v. Herold, 383 U.S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620 (1966), where the Supreme Court held that New York's statutory procedure permitting civil commitment of persons at the end of jail sentences without the jury trial safeguard afforded persons subject to ordinary civil commitment violated equal protection. The Court held that the fact of past criminal conduct lacked a sufficient connection with current mental illness to justify lesser procedural safeguards. "Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to

show whether a person is mentally ill *at all.*" *Id.* at 111, 86 S.Ct. at 763. (Emphasis in original.) The Court in *Baxstrom* further stated that "[a] person with a past criminal record is presently entitled to a hearing on the question whether he is dangerously mentally ill so long as he is not in prison at the time civil commitment proceedings are instituted. Given this distinction, all semblance of rationality of the classification, purportedly based upon criminal propensities, disappears."[3] *Id.* at 115, 86 S.Ct. at 764.

*Bolton* and *Baxstrom* stand for a basic proposition that a proven history of past dangerousness or illness, while certainly admissible in evidence, may not be used as an excuse to abrogate or change well recognized safeguards, including burden of proof, in civil commitment proceedings, or their equivalent, to determine present dangerousness or illness. The majority ignores this teaching of *Baxstrom* and *Bolton*. Moreover, my brethren fail to appreciate that acquittal by reason of insanity says precious little on the question whether a person presently suffers from mental illness. At most, an insanity acquittal means that at the time the charged crime was committed, which ordinarily would be months or sometimes years before the Section 301(d) hearing, there was a reasonable doubt that the defendant was free of such an illness. Since a reasonable doubt as to sanity is hardly tantamount to a conclusion of mental illness, there may well be only the flimsiest relation between the Government's failure to prove past capacity and current incapacity.[4] Thus it can hardly be argued that the prior acquittal, standing alone, has any necessary bearing as a

3. Shortly after *Baxstrom*, the New York Court of Appeals came to a conclusion similar to this court's in *Bolton*. In People v. Lally, 19 N.Y.2d 27, 277 N.Y.S. 2d 654, 224 N.E.2d 87 (1966), it held that continuing commitment of persons acquitted by reason of insanity required that the state grant the defendant the benefit of the same procedural safeguards, jury trial in particular, as were granted all others civilly committed. It said, 19 N.Y.2d at 35, 277 N.Y.S.2d at 660, 224 N.E.2d at 92, that this equivalent procedural protection was required by the "spirit if not the express langu[a]ge of the *Baxstrom* decision."

4. Bolton v. Harris, *supra* note 2, 130 U.S. App.D.C. at 8, 395 F.2d at 649.

factual matter on the mental illness finding to be made in the Section 301(d) hearing.

Yet the thrust of the majority opinion is that appellant Brown's prior acquittal must somehow skew the factual determination to be made in the current Section 301(d) hearing. As I have always understood the issue of burden of proof, the standard we adopt reflects our view as to the risk of error we are willing to accept in our judgments.[5] A heavy burden of proof in criminal cases, for example, reflects our belief that, given the consequences of conviction, only a minimal chance of error will be tolerated, that it is better to risk letting culpable defendants go free as the price of ensuring that those not culpable will be acquitted to the greatest extent possible. In civil commitment cases the majority seems prepared to concede that this logic —basically, our abhorrence of wrongful incarceration—dictates a greater burden of proof than "preponderance of evidence" as to the relevant issues of illness and dangerousness. But with respect to those acquitted of criminal charges by reason of insanity, my brethren pull back. They do this notwithstanding the teaching of *Baxstrom* and *Bolton* and in spite of the fact that the prior judgment of acquittal speaks in muted tones at best to the central question of current illness.

The majority's central proposition is that Brown should be treated differently because he has already been found to have committed a series of indisputably dangerous felonies. These acts are said to dictate lesser solicitude for his rights —as expressed through a burden of proof —than if he were sought to be committed before he was found to have committed such acts. But it should be obvious that these acts, standing alone, go only to the civil commitment standard of dan-

gerousness, which Brown's counsel has stipulated is not at issue, and not to the additional, central, question of mental illness. Yet the majority opinion is willing to accept the *non sequitur* that the admitted fact of dangerousness in the past must have a necessary bearing on the court's finding on the question of illness in the present.

The underlying justification for the majority's acceptance of this illogic seems to be its fear that strengthening the burden of proof in Section 301(d) proceedings will cause wholesale release of persons acquitted of crimes by reason of insanity. This possibility, coupled with the fact that persons with "meaningful elements of responsibility" may be acquitted by reason of insanity, is said to raise the spectre that the insanity defense may be abused. While this argument has a superficial appeal, it clearly proves too much. For its logical import—a policy of relaxing constitutional safeguards in incarcerating those acquitted by reason of insanity—was rejected in *Bolton* where we held that mandatory civil commitment following a successful insanity defense was constitutionally unjustifiable and that the procedural safeguards used in ordinary civil commitment proceedings were required. No one will disagree that the imposition of the safeguards required by *Bolton* reduces the probability that all those acquitted by reason of insanity will be incarcerated. But in my judgment, *Baxstrom* precludes this court from overruling *Bolton,* even if a majority of its members were so inclined.

Finally, in my view it is untenable to argue, as does the majority, that this disparity in burdens of proof is justifiable as a means of deterring frivolous insanity defenses. So long as the burden of proof rests on the Government in Section 301(d) proceedings,[6] I doubt that

5. *See* In re Winship, *supra* note 1, 397 U.S. at 371–372, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (Mr. Justice Harlan, concurring) ; Speiser v. Randall, 357 U.S. 513, 525– 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

6. The changes made in § 301(d) by the D.C. Court Reform & Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473–668, while not relevant in this case, seriously alter the procedure for treat-

defense counsel's criminal trial strategy will be crucially affected by a necessarily speculative evaluation of his post-trial chances of dealing with one or another standard of proof. More important, it seems anomalous, to say the least, that this court, which has given such consistent recognition to the need for a carefully administered insanity defense, *see, e. g.*, United States v. Brawner, 153 U.S. App.D.C. 1, 471 F.2d 969 (1972) (*en banc*), should suddenly embrace such a roughhewn and very possibly useless means of restraining its use.

It is doubtless true, as the majority suggests, that the insanity defense as it has been administered in this case, when coupled with the *Bolton* decision, might in theory give rise to a "revolving door" phenomenon whereby persons who have committed dangerous acts may be first acquitted by reason of insanity and next totally freed because of the Government's inability to meet the standards of proof for civil commitment. But this problem of slippage is not eliminated by the disparity in burdens of proof endorsed by the majority. At best it is only reduced, and at the terrible price of incarcerating persons for a mental illness we are not sure they have.[7] *Bolton* sought to place those acquitted by reason of insanity on the same footing as those haled before the court in ordinary civil commitment proceedings. I would continue to follow its teaching. Indeed, given *Baxstrom*, in my judgment we have no choice.

I respectfully dissent.

ment of persons acquitted by reason of insanity. Under the new legislation, those acquitted by reason of insanity shall be committed to a hospital for the mentally ill and provided with a hearing within 50 days to determine whether they shall be released. In that hearing, unlike the hearing utilized in this case, the burden of proof is on the person confined to prove that he has recovered his sanity and will not in the reasonable future be dangerous to himself or others. *See* 24 D.C. Code § 301(d)(1)–(2) & (e) (Supp. V 1972).

7. Because of the ambiguous nature of the very concept of mental illness, *see* Wash-

ington v. United States, 129 U.S.App. D.C. 29, 31, 390 F.2d 444, 446 (1967), and its potentially "grab bag" quality, *see* Boutilier v. Immigration & Naturalization Service, 387 U.S. 118, 131, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967) (Mr. Justice Douglas, dissenting), it has been repeatedly recognized that endorsing a mild standard of proof in commitment cases can result in grave injustice. *See* Murel v. Baltimore City Criminal Court, *supra* note 2, 407 U.S. at 359, 92 S.Ct. 2091, 32 L.Ed.2d 791 (Mr. Justice Douglas, dissenting) ; Note, *supra* note 2, 79 Harv. L.Rev. at 1291 ; *cf.* Lessard v. Schmidt, *supra* note 2.