**In the Matter of Shirley HODGES, Appellant.**

·No. 7638.

District of Columbia Court of Appeals.

Argued June 27, 1974.

Decided Sept. 23, 1974.

Jeffrey Freund, Washington, D. C., for appellant.

Albert H. Turkus, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Craig M. Bradley, Asst. U. S. Attys., were on the brief, for appellee.

Percy H. Russell, Jr., and Joseph F. McSorley, Asst. U. S. Attys., also entered appearances for appellee.

Before REILLY, Chief Judge, and KELLY and FICKLING, Associate Judges.

FICKLING, Associate Judge:

On March 14, 1973, appellant, a 45-year-old woman, was admitted to St. Elizabeths Hospital for emergency hospitalization pursuant to D.C.Code 1973, § 21–521. Thereafter on March 22, 1973, the Superintendent of the hospital filed a petition for judicial hospitalization pursuant to D.C.Code 1973, § 21–541. Following a hearing on April 3, 1973, the Commission on Mental Health—after finding that appellant was mentally ill and, as a result, dangerous—recommended to the Superior Court of the District of Columbia that she be committed to St. Elizabeths for an indefinite period. Appellant asserted her right to a jury trial in order to contest the findings of the Commission. D.C.Code 1973, § 21–545.[1] On May 23, 1973, the trial was held and the jury returned a verdict finding that appellant was mentally ill

1. § 21–545. Hearing and determination by court or jury; order; witnesses; jurors

(a) Upon the receipt by the court of a report referred to in section 21–544, the court shall promptly set the matter for hearing and shall cause a written notice of the time and place of the final hearing to be served personally upon the person with respect to whom the report was made and his attorney, together with notice that he has five days following the date on which he is so served within which to demand a jury trial. The demand may be made by the person or by anyone in his behalf. If a jury trial is demanded within the five-day period, it shall be accorded by the court with all reasonable speed. If a timely demand for jury trial is not made,

the court shall determine the person's mental condition on the basis of the report of the Commission, or on such further evidence in addition to the report as the court requires.

(b) If the court or jury, as the case may be, finds that the person is not mentally ill, the court shall dismiss the petition and order his release. If the court or jury finds that the person is mentally ill and, because of that illness, is likely to injure himself or other persons if allowed to remain at liberty, the court may order his hospitalization for an indeterminate period, or order any other alternative course of treatment which the court believes will be in the best interests of the person or of the public. . . .

and, because of that illness, likely to injure herself or others if allowed to remain at liberty. The trial court accordingly ordered her committed indefinitely to St. Elizabeths. Appellant contends on appeal that she was deprived of her Fifth Amendment right to due process because the jury found *by a preponderance of the evidence* rather than *beyond a reasonable doubt* that she was mentally ill and, consequently, dangerous. We agree and reverse.[2]

I

On March 14, 1973, appellant burst into a meeting then in progress in the office of Jerry Wilson, the Chief of Police for the District of Columbia. She told Officer Gloria Vessels, the receptionist, that she wanted to see Chief Wilson in order to give him some papers concerning national security. Officer Vessels explained to appellant that Chief Wilson was not in and that she would have to leave the meeting room. After some physical effort by Officer Vessels, appellant was escorted from the room. Officer Vessels offered to take the papers and give them to Chief Wilson, but appellant refused the offer and said the papers must be given to then-Attorney General John Mitchell. Officer Vessels observed that appellant's speech was incoherent and rambling, and that the "national security" papers included some old newspaper clippings and a long piece of paper with handwriting all over it. A transport vehicle was called and appellant was taken to St. Elizabeths for hospitalization.

Two psychiatrists testified at appellant's trial. The first, Dr. Leon Conchegul, a staff physician from St. Elizabeths, concluded that appellant was suffering from chronic undifferentiated schizophrenia and that she represented a danger to other persons. His conclusion that she was dangerous was based upon two incidents of past conduct. The first involved the throwing

of a brick through the window of the residence of the Mayor of New York City. Appellant was arrested for this act but fled after her father posted bond.

The second incident arose out of appellant's first emergency hospitalization at St. Elizabeths, six months before the March 14 hospitalization. Arrangements had been made by St. Elizabeths with appellant's relatives in New York City to send her there for treatment. Two members of the staff took appellant to the airport and placed her on a plane to New York. Appellant, however, alighted from the plane moments before it departed. The staff personnel then placed appellant on the next flight for New York. This time everything appeared to go smoothly. Nevertheless, shortly after the staff personnel returned to the hospital, Dr. Conchegul received a call from a federal law enforcement agent. The agent informed him that appellant's flight had landed at Andrews Air Force Base because of a note handed to a stewardess by appellant. The note stated there was a bomb on the plane and it should land immediately to enable her to appear in federal court to testify on an important matter.

The other psychiatrist, Dr. Gary L. Singleton, a physician-member of the Commission on Mental Health, similarly concluded that appellant was schizophrenic and dangerous to others. He relied upon the airplane incident and, to a lesser extent, the brick-throwing incident in making this diagnosis.

Before the jury was instructed, defense counsel asked to approach the bench so as to proffer certain jury instructions. The trial court refused to let defense counsel approach the bench and instructed the jury, *inter alia,* that the government had the burden of proving its case by a preponderance of the evidence. After the instructions were given, defense counsel approached the bench and requested that the

2. Appellant also contends that the trial court erred in denying her motion for a directed verdict. Because we reverse on another ground, it is unnecessary to consider this contention.

jury be instructed that the government's burden of proof is beyond a reasonable doubt. The request was denied.

## II

The United States Court of Appeals for the District of Columbia Circuit was recently faced with the identical issue presented here. The court held that in an involuntary civil commitment trial conducted pursuant to D.C.Code 1973, § 21–545, the Due Process Clause of the Constitution requires proof beyond a reasonable doubt that the respondent is mentally ill and, because of that illness, is likely to injure himself or other persons if allowed to remain at liberty. In re Ballay, 157 U.S. App.D.C. 59, 482 F.2d 648 (1973). Although decisions by this Circuit after February 1, 1971, are not controlling precedent, they are "entitled to great respect." M. A. P. v. Ryan, D.C.App., 285 A.2d 310, 312 (1971). We find Judge Tamm's scholarly reasoning in Ballay persuasive and, accordingly, adopt the holding of that decision.

The government contends, however, that this court is bound by Bolton v. Harris[3] and In re Alexander[4] and that if we follow the Ballay decision, Bolton and Alexander will be overruled—a result which cannot be accomplished without sitting en banc.

In our opinion, neither Bolton nor Alexander is binding precedent on the question presented here. In Alexander appellant made only two contentions: (1) that the District Court erred in instructing the jury that it could consider a mental defect to be a mental illness under the statute, and (2) that the District Court erred in ordering appellant's hospitalization at St. Elizabeths in the absence of a showing that he would receive medical and psychiatric treatment there. The court decided these two issues

adversely to appellant. The court never addressed itself to the issue of what standard of proof due process required. The language the government asserts as holding that the standard of proof is by a preponderance of the evidence is merely a recitation of the then-accepted preponderance standard.

Similarly, the question of what standard of proof due process required was not at issue in Bolton. The court was instead concerned with the rights afforded a criminal defendant found not guilty by reason of insanity. Prior to Bolton, such a person was automatically committed to St. Elizabeths Hospital without a hearing of any kind. Bolton argued that such procedures deprived him of equal protection because he was treated differently from any other non-convicted person who resisted involuntary commitment. The court agreed and held that Bolton was entitled to a hearing equivalent to that provided in other involuntary civil commitment cases. In the course of so holding, the court—in a footnote—briefly outlined the nature of such hearings, including the then-accepted preponderance standard. Bolton v. Harris, supra 130 U.S.App.D.C. at 10 n. 50, 395 F. 2d at 651 n. 50.

However, in a juvenile delinquency proceeding, the Supreme Court in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970), required a reasonable doubt standard to be applied because a person's liberty was at stake. Therefore, we think that the preponderance standard accepted in Bolton and in Alexander was, in effect, overruled since liberty was also at stake.

We accordingly reverse on the ground that the jury was not instructed to find beyond a reasonable doubt that appellant was both mentally ill and dangerous.

Reversed.

---

3.  130 U.S.App.D.C. 1, 10 n. 50, 395 F.2d 642, 651 n. 50 (1968).

4.  125 U.S.App.D.C. 352, 354, 372 F.2d 925, 927 (1967).