STATE OF CONNECTICUT *v.* WILLIAM J. WARREN

HOUSE, C. J., COTTER, LOISELLE, LONGO and BARBER, Js.

Argued May 9—decision released July 22, 1975

*John R. Williams,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John R. Redway,* assistant state's attorney, for the appellee (state).

House, C. J. This is an appeal by the defendant, William J. Warren, from a judgment of the Superior Court ordering his confinement in the Connecticut Valley Hospital at Middletown pursuant to § 53a-47 of the General Statutes.

Section 53a-47 is a lengthy statute providing the procedure to be followed for the confinement, examination and release of a person acquitted of an offense on the grounds of mental disease or defect.

Very briefly summarized insofar as it affects the present case, the statute provides that in cases of acquittal of an accused on such grounds the court shall order such person to be confined in a state hospital for mental illness for a reasonable time not to exceed ninety days for an examination to determine his mental condition, that within sixty days of the confinement the superintendent of the hospital and the retained psychiatrist, if any, shall file reports with the court setting forth their findings and conclusions "as to whether such person is mentally ill to the extent that his release would constitute a danger to himself or others." It further provides that upon receipt of such reports the court shall schedule a hearing and if it determines that a preponderance of the evidence at the hearing establishes that the person is mentally ill to the extent that his release would constitute a danger to himself or others, the court shall confine the person to a suitable hospital or other treatment facility. The confinement, if ordered, shall continue until the person is no longer mentally ill to the extent that his release would constitute a danger to himself or others, provided that the total period of confinement except in the absence of specified circumstances shall not exceed a maximum term fixed by the court, which maximum term shall not exceed the maximum sentence which could have been imposed if the person had been convicted of the offense, and where the offense is a class A felony the maximum term shall be twenty-five years.

After being indicted by a grand jury for the crime of murder in the first degree, the defendant was tried by a jury which returned a verdict of not guilty by reason of insanity. The court ordered the defendant confined in the Connecticut Valley

Hospital for an examination to determine his mental condition, pursuant to the provisions of § 53a-47 (a) (1) of the General Statutes. Patrick A. Lee, a psychiatrist and unit chief of Battell Hall at the hospital, was assigned pursuant to § 53a-47 to file a report on the defendant. In preparation for that report, Lee spoke with the defendant at the hospital several times; he also conferred with his staff and reviewed their records as to their observations of the defendant. Lee discussed with the defendant the nature of the criminal case against him and the defendant related to the doctor the facts surrounding the incident and told the doctor about his own background as well.

The finding of the court is that since the time of his hospitalization the defendant had been receiving one of the major tranquilizing antipsychotic drugs. This drug was administered because of information Lee obtained from the Whiting Forensic Institute that the attitude and behavior of the defendant had changed considerably as a result of this medication. This information showed that after medication was given the defendant's tendency to violence and psychopathic behavior was markedly decreased. It was Lee's opinion that without the medication the defendant could revert back to the hostility, the failure to get along with people and the outbursts of rage which he had exhibited while under observation at the Whiting Forensic Institute. Further, it was Lee's opinion that if the defendant were released from the hospital and he failed to take the medicine prescribed for him, he would constitute a danger to himself and others. Lee's report with regard to his examination of the defendant was entered into evidence as state's exhibit A. In the report

dated May 24, 1974, Lee stated: "It is my opinion at this time, based on the examination of all available records and personal interviews with Mr. Warren, that he would benefit from a further period of hospitalization." The court found that according to studies of the Veterans Administration Hospital, mentally ill patients released on medication to control their illness frequently have failed to take their medication. These studies show that almost 50 percent of the admissions to those hospitals were due to the failure of patients to realize the need to continue taking medication for an indefinite period of time.

The court concluded that the defendant was mentally ill to the extent that his release would constitute a danger to himself and others, that there was a strong possibility that the defendant, if released, might not continue use of the antipsychotic medication without which he is a danger to himself or others, and that there is no certain means of controlling the taking of his medication once he is released from a mental institution. It rendered judgment that the defendant be confined to the Connecticut Valley Hospital "until he is no longer mentally ill to the extent that his release would constitute a danger to himself or others, but in no event for longer than a maximum term of a period not to exceed 25 years, subject, however, to possible further confinement." It is from this judgment that the defendant took the present appeal.

The defendant has assigned error to certain of the court's findings as being unsupported by the evidence. Specifically, these findings are: that the defendant, if released, would constitute a danger to himself or others; that the defendant's condition is not eliminated but is only controlled by medica-

tion and that the medication does not affect the cause of his mental problems, only the symptoms; and that once released from a mental institution, there is no way in · which authorities can control whether the defendant will faithfully and constantly take his medicine. The state called the only witness at the hearing, Patrick A. Lee, the examining psychiatrist. The appendix to the defendant's brief contains a copy of the transcript of Lee's testimony and a written report submitted by him. We have examined this evidence and conclude that the findings attacked by the defendant either find direct support in the evidence adduced at the hearing or are reasonable and logical inferences drawn by the trial court and are properly includable in the court's finding. *Freccia* v. *Martin,* 163 Conn. 160, 162, 302 A.2d 280; *Cappiello* v. *Haselman,* 154 Conn. 490, 492, 227 A.2d 79.

The defendant next claims error in the following ruling made by the trial court: "The defendant is ordered confined to the Connecticut Valley Hospital until such time as he is no longer mentally ill, to the extent that his release would constitute a danger to himself or others, provided that the total period of his confinement shall not exceed twenty-five years, all in conformity with § 53a-47 of the Connecticut General Statutes." The basis of the defendant's claim is that such a ruling is not supported by the facts of the case and that the proof offered by the state did not meet the burden of proof required by § 53a-47.[1]

---

[1] General Statutes § 53a-47 (a) provides in pertinent part: "If the court determines that the preponderance of the evidence at the hearing establishes that such person is mentally ill to the extent that his release would constitute a danger to himself or others, the court shall confine such person in a suitable hospital or other treatment facility."

With respect to the preponderance of the evidence test, we have stated that it means simply that "the evidence must, when considered fairly and impartially, induce a reasonable belief that the fact in issue is true." *Conley* v. *Board of Education,* 143 Conn. 488, 497, 123 A.2d 747; *Beckwith* v. *Stratford,* 129 Conn. 506, 507, 29 A.2d 775; *Darrow* v. *Fleischner,* 117 Conn. 518, 520, 169 A. 197. After a review of the evidence as printed in the appendix to the defendant's brief, we conclude that the facts found by the court are amply supported by the evidence in the case and established by a preponderance of the evidence.

The defendant has specifically assigned error to the following conclusions reached by the court: that the defendant is mentally ill to the extent that his release would constitute a danger to himself or others; that there is no certain means of controlling the taking of his medication once he is released from a mental institution; that medication when properly taken controls the symptoms of the defendant's illness but does not eliminate its cause; that there is a strong possibility that the defendant, if released, might not continue use of the antipsychotic medication without which he is a danger to himself or others; that the salutary purposes of § 53a-47 of the General Statutes would be defeated if under the circumstances of this case the defendant could walk out free on a promise to take his medication. Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts. The court's conclusions are to be tested by the findings and not the evidence. *Hames* v. *Hames,* 163 Conn. 588, 592, 316 A.2d 379; *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92. Conclusions logically sup-

ported by the finding must stand. *Freccia* v. *Martin,* 163 Conn. 160, 164, 302 A.2d 280. From the facts found by the court, to which we have already referred, especially the facts concerning the defendant's tendency to violence, it is clear that the court's conclusions are amply supported and do not violate law, logic or reason.

The defendant has also assigned error to the refusal by the court to add to the finding facts contained in fourteen paragraphs of his draft findings which facts he claims were uncontested. This court may correct a finding which fails to include admitted or undisputed facts. Practice Book § 627; *Morrone* v. *Jose,* 153 Conn. 275, 277, 216 A.2d 196; *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 223, 215 A.2d 123. A fact, however, is not admitted or undisputed simply because it is uncontradicted. *Freccia* v. *Martin,* supra, 162. If the claimed additions are implicit in the findings or are facts not material to the issues in the case, the trial court is not required to include them in the finding. *Charter Oak Estates, Inc.* v. *Kearney,* 160 Conn. 522, 525, 280 A.2d 885; *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619. Furthermore, to secure an addition to the finding the defendant must point to some part of the appendix, the pleadings or an exhibit properly before the court which discloses that the state admitted the truth of the fact or that its validity was conceded to be undisputed. *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 264, 320 A.2d 811; *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759. The defendant is not entitled to any corrections in the court's finding of fact.

The defendant last attacks the constitutionality of § 53a-47 of the General Statutes, claiming that

the preponderance of the evidence test which it prescribes violates the due process and equal protection clauses of the fourteenth amendment to the constitution of the United States. Specifically, he argues that the constitution requires that the burden of proof standard that is necessary for a civil commitment be the same as is necessary for the commitment of one who has been found not guilty by reason of insanity.

The defendant relies upon a decision of the United States Court of Appeals for the District of Columbia Circuit for support for his position. Noting that that court has held that proof beyond a reasonable doubt is necessary for a civil commitment; *In re Ballay,* 482 F.2d 648 (D.C. Cir.); he argues that this standard should apply as well to an accused acquitted on the grounds of insanity. However, in the *Ballay* case, the court expressly refrained from deciding this precise issue. *In re Ballay,* supra, 650 n.7. Further, that same court has upheld the preponderance of the evidence test in the commitment of an insanity-acquitted defendant in *United States* v. *Brown,* 478 F.2d 606 (D.C. Cir.). We find the logic of that opinion most persuasive.

There are very significant differences between the civil commitment situation and the commitment of an accused found not guilty because of insanity. In the latter case, the accused has been found beyond a reasonable doubt to have committed a criminal act, and, in addition, it has been found that at the time of the commission of that act there was at least reasonable doubt as to his sanity. In the present case, both these determinations were made by a jury after a trial.

These two factors markedly distinguish such a defendant from a defendant in a civil commitment proceeding where the sole issue is the predictability of the subject's propensity to be dangerous to himself or others. The uncertainty in the latter situation is the justification for the higher burden of proof mandated by those courts which have considered the problem. See *In re Ballay,* supra, 656, and cases cited therein.

Noting this distinction, the United States Court of Appeals for the District of Columbia Circuit said in *United States* v. *Brown,* supra, 611: "There is justification for the preponderance of proof standard for confinement of the insanity-acquitted even assuming a higher standard is required prior to civil commitment for propensity. . . . The difference between the classes for purposes of burden of proof, is in the extent of possibility and consequence of error. If there is error in a determination of mental illness that results in a civil commitment, a person may be deprived of liberty although he never posed any harm to society. If there is a similar error in confinement of an insanity-acquitted individual, there is not only the fact of harm already done, but the substantial prospect that the same error, ascribing the quality of mental disease to a less extreme deviance, resulted in a legal exculpation where there should have been legal responsibility for the antisocial action." Observing a further distinction, that court went on to say: "Even assuming that a standard of persuasion higher than 'preponderance' is mandated for involuntary civil commitment proceedings, it is not necessarily applicable as to the issue of commitment of a person who has successfully claimed the defense of insanity in a criminal proceeding.

In *Lynch* v. *Overholser,* . . . Justice Harlan's opinion, after noting the 'elaborate procedural precautions included in the civil commitment provisions' pointed out that these did not necessarily apply to the person who successfully presses an insanity defense to a criminal proceeding. See 369 U.S. 705 at 715, 82 S. Ct. 1063 at 1069 [8 L. Ed. 2d 211]: 'The criminal defendant who chooses to claim that he was mentally irresponsible when his offense was committed is in quite a different position. It is true that he may avoid the ordinary criminal penalty merely by submitting enough evidence of an abnormal mental condition to raise a reasonable doubt of his responsibility at the time of committing the offense. Congress might have thought, however, that having successfully claimed insanity to avoid punishment, the accused should then bear the burden of proving that he is no longer subject to the same mental abnormality which produced his criminal acts. Alternatively, Congress might have considered it appropriate to provide compulsory commitment for those who successively invoke an insanity defense in order to discourage false pleas of insanity. We need go no further here than to say that such differentiating considerations are pertinent to ascertaining the intended reach of this statutory provision.' " *United States* v. *Brown,* supra, 610.

We have repeatedly held that a statute cannot be held unconstitutional unless its invalidity is established beyond a reasonable doubt. *State* v. *Clemente,* 166 Conn. 501, 506, 353 A.2d 723; *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53. The defendant has failed to meet this burden.

There is no error.

In this opinion the other judges concurred.